UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

STEPHEN C. TASSIE,                              :
                                                :
        Plaintiff,                              :
                                                :
        v.                                      :       File No. 1:11-CV-202
                                                :
MICHAEL J. ASTRUE, COMMISSIONER                 :
OF SOCIAL SECURITY,                             :
                                                :
        Defendant.                              :
_____        :


MEMORANDUM AND ORDER
(Docs. 6, 10)

I.      Introduction

        Plaintiff Stephen C. Tassie (Tassie) brings this action under 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and reversal of the Commissioner of Social Security's

(Commissioner) denial of his application for disability insurance benefits.  Pending before the Court

are Tassie's motion seeking an order reversing the Commissioner's decision (Doc. 6), and the

Commissioner's motion seeking an order affirming his decision (Doc. 10).  For the reasons set forth

below, Tassie's motion to reverse is denied and the Commissioners' motion to affirm is granted.

II.     Background

        In June 2009, Tassie filed applications for disability insurance benefits and supplemental

security income, alleging he became disabled in early November 2005.[1]  (A.R. 128-37.)  On

October 16, 2009, his applications were denied.  (A.R. 67-75, 76-84.)  Following Tassie's request for

reconsideration (A.R. 85), the determination denying disability insurance benefits was upheld

_____

        [1] The disability insurance benefits application stated his date of disability as November 1,
2005.  (A.R. 128.)  The supplemental security income application stated his date of disability as
November 7, 2005.  (A.R. 135.)

because he was not found to be disabled prior to December 31, 2007, the date he was last eligible for these benefits. (A.R. 86-92.) Tassie was, however, determined to be disabled due to mental health symptoms as of June 1, 2009, and awarded supplemental security income benefits as of that date (A.R. 63.) Tassie filed a timely request for an administrative hearing (A.R. 93), which was held by Administrative Law Judge (ALJ) Robert Klingebiel on January 6, 2011 (A.R. 31-56). Tassie appeared with counsel at the hearing and testified. Id.

The ALJ issued a decision on March 8, 2011, concluding Tassie was not disabled from the alleged disability onset date until June 1, 2009, and specifically that he was not under a disability within the meaning of the Social Security Act at any time through December 31, 2007, the date he was last insured. (A.R. 8-16.) The ALJ found that, prior to June 2009, although Tassie had the severe impairment of disorder of the muscle, ligament and fascia of the left upper extremity (A.R. 11), he retained the residual functional capacity to perform light work except he was limited to simple instructions due to pain (A.R. 12). The Decision Review Board selected the ALJ's decision for review, however it did not timely complete its review of the claim and the ALJ's decision became the final decision of the Commissioner. (A.R. 1-3.)

On August 11, 2011, Tassie timely filed this action raising three challenges to the ALJ's decision. (Doc. 1.) He argues the ALJ erred (1) in determining the onset date of disability, (2) in failing to call upon a medical consultant at the hearing, and (3) in failing to call upon a vocation expert at the hearing. (Doc. 6 at 6.)

On November 7, 2005, Tassie sustained an injury to his left arm at work, which was diagnosed as a partial tear of the biceps tendon. (A.R. 267, 269, 271.) Tassie had surgery to repair the biceps tendon on January 25, 2006. (A.R. 265.) On March 21, Tassie reported he had lost his current work position and was looking for another job; he was released to work with restrictions of

not lifting over two pounds, using ladders or doing repetitive activity. (A.R. 263.) Tassie irregularly attended physical therapy sessions from February through April 5, 2006, when he was transferred into the work conditioning program. (A.R. 333-36.) He was discharged from that program on May 8, 2006, after five cancellations and four "no-shows" for appointments. (A.R. 336.) As of April 25, he was released to look for work without restriction and to perform activities as tolerated. (A.R. 262.)

Tassie continued to have pain in his left arm and, in July 2006, was restricted to medium duty work capacity, and in August, was diagnosed with cubital tunnel syndrome and carpal tunnel syndrome. (A.R. 257.) On September 18, 2006, he underwent surgery consisting of endoscopic carpal tunnel release on his left wrist and ulnar nerve anterior transposition on his left elbow. (A.R. 253.) At his follow-up visit on October 10, he had full strength though he lacked full extension and flexion in his elbow. (A.R. 252.) Though his recovery was to include attendance at physical therapy one to two times per week, as of his November 14 appointment, he had attended only once. (A.R. 251.) He was discharged from physical therapy on December 22, 2006, due to five cancellations and three "no-shows." (A.R. 247.) He attended only four appointments in the prior six weeks. (A.R. 247.)

In late January 2007, Tassie underwent an MRI which revealed degenerative disc disease at C6-7. (A.R. 276, 315.) He visited the emergency room five times from January to February 10th, each time seeking and receiving narcotics (A.R. 389), and again on April 2, 2007, when he was not given narcotics (A.R. 392-97). At his April appointment, he reported being unemployed and receiving worker's compensation. (A.R. 392.) At this time, he was also occasionally seeing his primary healthcare provider. (A.R. 509-12.) On February 12, he was evaluated at the Spine Institute. (A.R. 1057.)

III.    Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability claims. Butts v. Barnhart, 388 F.3d 377, 380-81 (2d Cir. 2004). At the first step, the ALJ determines whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not, the ALJ determines whether the claimant has a "severe impairment." Id. §§ 404.1520(c), 416.920(b). If the ALJ finds the claimant has a severe impairment, the third step requires the ALJ to determine whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. §§ 404.1520(d), 416.920(d). A claimant is presumptively disabled if the impairment meets or equals a listed impairment. Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's residual functional capacity (RFC) precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." Id. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, Butts, 388 F.2d at

4

383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record de novo to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002) (citation omitted). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such a decision. 42 U.S.C. § 405(g). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

IV.     Discussion

Tassie argues the ALJ's determination of the onset date of disability of June 1, 2009, was not supported by substantial evidence because the ALJ did not properly weigh the evidence of record, including Tassie's allegations, work history, and objective medical record. (Doc. 6 at 7-10.) Specifically, he asserts he did not just wake up on June 1, 2009 with mental illness. Id. at 10. He points to a medical note from May 2006, stating he was very agitated and anxious with rapid speech and good eye contact. (A.R. 525.) At that examination, Tassie reported anxiety and difficulty sleeping, thinking, and concentration as well as "concerns over money problems." (A.R. 526.)

An ALJ must evaluate the credibility of a claimant and arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of symptoms. Lugo v. Chater, 932 F. Supp. 497, 503 (S.D.N.Y. 1996) (citation omitted). Here, the ALJ concluded Tassie's

"statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible prior to June 1, 2009, to the extent they are inconsistent with the above residual functional capacity assessment." (A.R. 13.) The RFC -- that Tassie could perform light work except limited to simple instructions due to pain -- was based on and determined after a thorough review of the objective medical evidence. The ALJ evaluated Tassie's claims in light of his medical history. Id. Following surgery on his left biceps in November 2005, and physical therapy, on March 21, 2006, he was released to work activity with restrictions (A.R. 263), on April 26, 2006, he was released to work without restriction by his treating surgeon (A.R. 262), and on July 20, 2006, he was released to medium duty work (A.R. 260). Tassie reported that in 2006 he lifted weights to stay in shape (A.R. 263, 337) and testified that he cared for his young son at home during 2007 (A.R. 55). Given all the evidence before him, including the one medical note referencing anxiety (A.R. 526), the ALJ's finding that Tassie was not disabled, i.e. unable to engage in any substantial gainful activity because of an impairment expected to last more than a year, prior to December 31, 2007, is supported by substantial evidence.

Tassie next argues the medical evidence is ambiguous as to his alleged onset date of November 2005 and, consequently, the ALJ should have had a medical examiner present at the hearing. (Doc. 6 at 10-11.) The ALJ had Tassie's medical records available to him, which Tassie had time after the hearing to supplement. (A.R. 55-56.) The record also includes the reports of Drs. Ellen Atkins and Edward Hurley, non-examining agency reviewers (A.R. 659-62; 722-735), both of which stated there was insufficient evidence for the period from November 2005 to December 31, 2007. Tassie's argument that the medical evidence was ambiguous is misplaced; rather his medical history shows no evidence of severe mental impairments prior to December 31, 2007. As the Commissioner notes, it is Tassie's burden to prove he is disabled within the meaning

of the Social Security Act.  (Doc. 10 at 7 (citing C.F.R. § 404.1512 (2011); <u>Bowen v. Yuckert</u>,

482 U.S. 137, 146 n.5 (1987).)

Lastly, Tassie argues the ALJ erred in failing to call a vocational expert to assess his residual functional capacity and work abilities prior to June 1, 2009 in light of his non-exertional limitations. (Doc. 6 at 11-12.)  He asserts his "mental impairments caused a loss of work capacity in addition to his physical impairments dating back to November, 2005."  <u>Id.</u> at 12.  Tassie does not cite to the record to support this assertion and, based on the Court's de novo review of the record, there does not appear to be support for the assertion.  As noted, Tassie's medical history shows no evidence of severe mental impairments prior to December 31, 2007.  Accordingly, in light of the objective medical evidence, the ALJ's determination of Tassie's residual functional capacity will not be overturned as it is supported by substantial evidence.

V.      Conclusion

Because substantial evidence supports the ALJ's findings, Tassie's motion seeking an order reversing the Commissioner's decision (Doc. 6) is DENIED, and the Commissioner's motion seeking an order affirming his decision (Doc. 10) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 5th day of November, 2012.


/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge